Robert B. Milgroom v. Commissioner.
Milgroom v. Commissioner
Docket No. 87426.
United States Tax Court
T.C. Memo 1962-88; 1962 Tax Ct. Memo LEXIS 84; 21 T.C.M. (CCH) 478; T.C.M. (RIA) 62088; September 20, 1962
*84 Petitioner, a certified public accountant, in making an independent audit, discovered that The Arthur L. Ellis Co., the company under audit, had borrowed money from a bank on fraudulent representations as to accounts receivable and payable. Petitioner reported the facts to the bank. In an effort to salvage as much as possible for the bank, petitioner organized the Ellis Curtain Company, Inc., largely for the purpose of monitoring the continuing activities of The Arthur L. Ellis Co. Petitioner acquired one-third of the stock of the curtain company, and became an officer and salaried employee of that company. With some hope of getting referral business from the bank, petitioner loaned $25,770.96 to the curtain company for its corporate purposes. The loans did not provide for payment of interest and were unsecured. The bank was not obligated to refer business to petitioner. The loans became worthless in 1954. Petitioner does not claim that he was in the business of lending money. Held: Petitioner has not established that he is entitled to a business bad debt deduction under the provisions of sec. 166 of the Code of 1954. Robert B. Milgroom, Esq., 369 Ward St., Newton Centre, Mass., for the petitioner. Raymond T. Mahon, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: Respondent determined deficiencies in petitioner's income tax for the following *86 years in the amounts indicated as to each year: Taxable
Year
Deficiencies
1954
$1,050.81
1955
311.38
1956
426.53
1957
1,487.66
The primary issue before us is whether or not petitioner is entitled to deduct $25,770.96 as a business bad debt where the loan was made merely in the hope of getting referral business as an accountant through a bank which was not obligated to refer any such business. Since, as will appear infra, we hold that the debt in question was not a business bad debt, there will be no occasion to discuss a subsidiary issue relating to claimed net operating loss carry-overs which would become significant only in the event we held that the debt in question was a business bad debt. Findings of Fact The Petitioner during the years in question resided at 563 Washington Street, Brookline, 46, Massachusetts. He filed his individual income tax returns for the taxable years 1954 to 1957, inclusive, with the district director of internal revenue for the district of Massachusetts. During the taxable years 1952 to 1957, inclusive, the petitioner was self-employed as a certified public accountant. He had been in the public practice of accounting *87 for about 20 years. Petitioner was also a member of the Massachusetts bar. Petitioner, in making an independent audit of the books and records of The Arthur L. Ellis Co. for the year ended December 31, 1951, uncovered the fact that the company had been borrowing substantial amounts from The Rockland-Atlas National Bank of Boston on the strength of nonexisting accounts receivable. As of December 31, 1951, the books of the company overstated accounts receivable by about $80,000 and understated accounts payable by about $25,000. Petitioner, after test checks, called the situation to the attention of the bank which directed petitioner to complete his audit. The bank wished to salvage as much as possible, and in an effort to do so, the Ellis Curtain Company, Inc., was formed by petitioner in 1952 at the suggestion of the bank, largely to monitor the activities and liquidation of The Arthur L. Ellis Co.
At all times here material, petitioner owned one-third of the stock of Ellis Curtain Company, Inc., and held an additional one-third subject to an option to purchase by A. Linwood Ellis, president of The Arthur L. Ellis Co. The remaining one-third was owned by S. H. Chamberlain, Jr. *88 , treasurer of The Arthur L. Ellis Co.
During the years 1952 to 1954, inclusive, petitioner and his father (also an accountant) were both salaried employees of the Ellis Curtain Company, Inc. During the years 1952 to 1954, inclusive, petitioner made loans to Ellis Curtain Company, Inc., on open account without interest and with no security. The ultimate net indebtednes was $25,770.96. The debt became worthless in 1954. Petitioner made the loans partly in the hope of getting referral business from the bank. The bank was not obligated to refer such business to petitioner. During the years 1952 to 1954, inclusive, petitioner was not in the business of lending money. Neither petitioner nor his father participated in the fraudulent activities of The Arthur L. Ellis Co., and neither had any obligation to advance money to rectify such fraudulent acts. Petitioner in his 1954 income tax return claimed the deduction of the debt of $25,770.96 as a business bad debt. The respondent disallowed the deduction as a business bad debt but allowed it (subject to the limitations of section 1211(b)) as a nonbusiness bad debt. Opinion Respondent does not question the fact that a debt existed, *89 or the amount thereof, or that the debt became worthless in 1954. The only question is whether it is deductible in full under section 166(a) of the Code as a business bad debt or as a nonbusiness bad debt under section 166(d) [1] subject to the limitations of section 1211(b). Section 166(d)(2) defines a nonbusiness bad debt as "a debt other than - (A) a debt created or acquired * * * in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business." The burden of proof rests with petitioner. Petitioner appeared pro se, and was the only witness. His testimony was quite unconvincing in material respects. While we have no doubt that he had some *90 vague and generalized hope of getting referral business from the bank if he impressed them by his activities in connection with the Ellis Curtain Company, Inc., we cannot accept the view that his principal purpose in lending substantial amounts to the company was to get referral business. Obviously, the bank was not obligated to make his hope come true, and the only suggestion which petitioner himself makes as a basis for fulfillment of his hope is contained in his opening statement where he states that bank officials asked him and his father to "form a company and work out something to salvage the bank's money; and if you can, you won't regret it." Moreover, we think that the vague prospect of referral business as described by petitioner on the stand is too remote to support the view that the debt was created or acquired in connection with the business of an accountant or was incurred in the business of accountancy. See section 166(d)(2), supra. With the burden resting with petitioner, we face no duty of inquiring or speculating further as to his objectives. We need only add that, upon a meticulous review of the entire record, we fail to find any basis for allowance of the amount *91 in question as a business bad debt deduction. Decision will be entered for the respondent. Footnotes
1. SEC. 166. BAD DEBTS. * * *
(d) Nonbusiness Debts. - (1) General Rule. - In the case of a taxpayer other than a corporation - (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months.↩